Crutchfield *vs.* Patten *et al.*

---

H. CRUTCHFIELD, administrator, plaintiff in error, *vs.* GEORGE PATTEN *et al.*, defendants in error.

The plaintiff in error in this case filed his answer, in which he set up, by way of cross-bill, that a certain sum of money found to be due by the auditor to parties therein named, as daughters of the decedent, was correct as to the facts set out in such report, and admitted the trust and the rights of the parties, but alleged that such amount ought not to be paid, upon the ground that their husband's marital rights attached thereto, and that they had, by waste and mismanagement of the estate, rendered themselves liable for a larger amount to the estate, and the Court below dismissed the cross-bill upon motion:

*Held*, that the right at any time before a final decree distributing the assets to file a bill setting up grounds of equity against the payment of certain debts is recognized by this Court, and if the subject matter has been previously litigated or adjudicated before the Auditor upon the facts, and by the Court upon exceptions to his report, relative to the law, and the interlocutory judgment of the Court has confirmed the

report, such facts must arise upon plea to the cross-bill, and it was error in the Court to dismiss the same upon motion.

Equity.   Parties.   *Res adjudicata.*   Tried before Judge ONEAL.   Mitchell Superior Court.   June, 1871.

In December, 1861, Neal obtained two judgments against Allen Cochran.   Cochran died in 1863, and Jubal Cochran became his executor, and by his consent Polhill, the son-in-law of Allen Cochran, took possession of part of the estate and managed it.   In 1866, Neal filed a bill against Polhill, Jubal Cochran, etc., to cause the assets of the estate to be preserved by placing them in the hands of a Receiver for the benefit of Neal and the other creditors, with a prayer that their respective priorities be established, etc.

In November, 1866, a Receiver was appointed and ordered to convert the property into cash.   This was done.   Jubal Cochran died and H. Crutchfield was appointed administrator *de bonis non* of Allen Cochran.   And an Auditor was appointed and all claimants ordered to present and prove their claims before him.   The claims were afterwards submitted to an Auditor and he made a report thereon.   This report was recommitted to him " with the usual powers of a Master in Chancery," to hear and report upon any claims that may have been or may be presented against the estate and not yet reported upon, and especially to hear evidence and ascertain the amount of the claims of Mary Polhill and Medora Wade, claimed to be fiduciary debts, due by them to their father as their guardian, (and which they prayed should be settled on them,) and to pass upon their priority over all other debts, all to be heard at a time and place to be by him appointed, of which he should give notice.

Notice was given, a hearing was had before the Master in Chancery, and in April, 1869, he reported that the assets should be paid out in the following order : 1st. To Mrs. Polhill and Mrs. Wade ; 2d, the three judgments of Garnett Andrews; 3d, the judgment of Ewell Webb, and 4th,

Crutchfield *vs.* Patten *et al.*

that of John W. Dent, all obtained in 1860.   This Webb *fi. fa.* was founded on money loaned by the trustee of Melinda Zeigler to Allen Cochran and Crutchfield, procured Webb to sue it to judgment, and he subsequently transferred it to Crutchfield.

Crutchfield, as administrator, was, by his attorneys, present before the Master in Chancery.   When this report was filed various exceptions were filed thereto by attorneys for Crutchfield, administrator *et al.*, among which was a suggestion that Mrs. Polhill and Mrs. Wade were chargeable with the waste of said estate by their respective husbands, but this matter was not considered by the Master in Chancery.

At November Term, 1870, Melinda Zeigler represented that she had just become of age, had for years resided in Ohio, was interested in said fund, being the real owner of the Webb *fi. fa.*, and prayed to be made a party to said record. The order was granted.   At the same time, after all this, the said exceptions were withdrawn and the report was ordered to be confirmed.   At the same term there was a motion to set aside said finding of the Master, which is still pending in favor of Crutchfield, administrator, so far as appears.   (But part of the record being here, this and other statements herein may not be accurately correct.)

The Court, in May, 1871, dismissed the claims of Melinda Zeigler *et al.* against said fund, because their claims were founded on contracts made prior to June, 1865, and the claimants had not filed affidavits that all legal taxes had been paid, as is required by the Relief Act of the 13th of October, 1870.   Crutchfield, as administrator *de bonis non*, had answered Neal's bill, at May Term, 1871, in which, by way of cross-bill, he set forth the facts touching Mrs. Slaughter's claim by way of resisting her claim.   (For these facts, see *Slaughter vs. Culpepper*, *ante*, at this term.)   He also, at large, charged all the facts showing that, while Polhill was so in charge of the property of the estate he and Wade used a larger amount of it than Allen Cochran owed his daugh-

Crutchfield *vs.* Patten *et al.*

ters, their wives, whom they married before 1866. And he claimed that this claim of the wives vested in their respective husbands, and should therefore be set-off by said waste. Further, he set forth the facts as to Patten's purchase of cotton from Polhill, (see *Neal vs. Patten*, 40 Georgia Reports,) and prayed that the proceeds of that cotton be paid to him as the administrator, for distribution. These two last claims were based on averments that Polhill, Wade and Patten were insolvent. He did not attack the *amount* found to be due Mrs. Polhill and Mrs. Wade, but said that amount should offset as aforesaid by such waste, and that though a party as administrator he had never answered the bill, it had never been taken *pro confesso* as to him, and therefore he was not concluded. His object now was to get possession of all the assets to pay out according to law.

Further, in answer to the claim of Melinda Zeigler, he answered that she had resided in Ohio, and was just of age, as she averred ; that the Webb *fi. fa.* was hers ; that William Zeigler, by his will, left $30,000 00 to a trustee for her ; that he, Crutchfield, assumed this trust in 1859, and received the trust funds from his predecessor, amongst which was the note on Cochran, on which said Webb *fi. fa.* is founded. He had it sued in Webb's name, but in fact it was his as trustee for Melinda Zeigler, and he ever held it in that capacity only till her maturity, and then surrendered it to her. He prayed that her priority of claim on said fund be fixed by a decree.

Upon motion, the Chancellor dismissed all of this cross-bill because it was multifarious and an effort to revive indirectly the former judgments of the Court by which Crutchfield was concluded.

This is assigned as error.

LYON DEGRAFFENREID & IRVIN; VASON & DAVIS, for plaintiff in error.

JAMES L. SEWARD; WRIGHT & WARREN; A. D. HAMMOND; JOHN RUTHERFORD, for defendants.

Crutchfield *vs.* Patten *et al.*

LOCHRANE, Chief Justice.

It appears from the facts in this case that a certain contro-
versy was pending in the Court below in relation to the dis-
tribution of the assets of the estate of Allen Cochran, de-
ceased. During the progress of the litigation certain mat-
ters were submitted to an Auditor, before whom the parties
appeared, and whose report was made the judgment of the
Court. Exceptions filed to the report were adjudged invalid,
and the report of the Auditor was made the judgment of the
Court, by which two daughters of the decedent, both being
in life and married, were held to be entitled to a trust debt
due by the decedent, their father, to the amount of some
$7,000 00. The present case originates in the answer of
Crutchfield, who, as administrator of the estate, and thereby
representing all the parties, creditors at interest, and who
sets up in such answer, by way of cross-bill, that, admitting
the said daughters to be the children of Allen Cochran, and
the amount due them reported by the Auditor correct, still
their husbands, by their marital rights, were the owners of
such estate inherited by their wives, and that such husbands
had, by mismanagement and waste of the estate, rendered
themselves liable to an amount of indebtedness greater than
that which had been awarded, and the Court dismissed such
cross-bill upon motion in the nature of demurrer thereto.

The main question is, whether the judgment of the Court
in dismissing the bill under the facts was conformable to law.
It is admitted that this administrator was a party to the
original litigation, first, as the transferee of an execution, and
also as administrator, and either by himself or counsel par-
ticipated therein, and that the claims which he now sets up
have their existence in matters known to him in his capaci-
ties as aforesaid. We are satisfied from this record and by
the allegations of his bill, that the questions raised upon mo-
tion were not sufficient to have authorized the dismissal of
the bill. It was for all purposes a cross-bill, and set up new

matters not passed upon or legitimately within the scope and power of an Auditor or Master in Chancery; and the Court erred in dismissing it, and should have held that, inasmuch as the bill admitted all the report accomplished, the parties defendant thereto should have pleaded the previous litigation and set up in defense or estoppel thereto the questions of adjudication argued before this Court. As to how far the possession of the husband, as the agent of the executor, was a reduction to possession of the wife's equitable interest, is a matter well settled by the adjudication of this Court, but it is not for us to decide upon the pleadings. The question is, has the administrator of an estate the right to set up, by way of cross-bill, new equities before final decree distributing the assets, after the report of an Auditor, confirmed by a judgment of the Court, dismissing his case without proper pleadings setting up the matters litigated or adjudicated in estoppel? After consideration, we are satisfied that he had not. For, under the law, the Chancellor had to take the allegations of the bill as true, upon the motion to dismiss. And when the bill set up the report of the Auditor, and admitted its force as to the amount found to be due, but charged that the fund was the property of the husbands, and that they, by *waste* or mismanagement of the estate, had rendered themselves liable to a greater amount, etc., then this ground of equity could not be summarily disposed of by dismissal of the bill, but it invoked the defense to be set up by plea if the facts of the original litigation had previously covered this question, and the Court, upon such pleading, should have pronounced his judgment. For *laches* or delay by the administrator, was not in itself sufficient, nor was there such *decree* in the premises as operated as an estoppel, and the facts upon which the right of the defendants depended had to be pleaded to invoke' the judgment of the Court, if by them it appeared that the subject matter of the cross-bill had been in fact adjudicated.

Judgment reversed.